**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 17-72** |
| **JUAN JARMON, et al.** | : | |

**GOVERNMENT'S OMNIBUS MOTION FOR PRETRIAL DETENTION**

**TABLE OF CONTENTS**

**I. Facts ....................4**

**A. Probable Cause and Evidence....................4**

**B. Maximum Penalties ....................7**

**C. Danger to Community ....................8**

**D. Serious Flight Risk....................9**

**E. Rebuttable Presumption....................10**

**II. Background of Defendants and Coconspirators**

**1. JUAN JARMON ....................10**
**2. DAMON EDWARDS....................11**
**3. EDWARD STINSON....................11**
**4. DONTA EDWARDS....................12**
**5. RAHEEN BUTLER....................13**
**6. MICHAEL FERRELL ....................13**
**7. DOTTIE GOOD....................14**
**8. TAFT HARRIS, JR ....................15**
**9. STEVEN THOMPSON ....................15**
**10. STEPHEN DAWKINS, SR ....................16**
**11. COCONSPIRATOR #1 ....................16**
**12. COCONSPIRATOR #2 ....................17**
**13. COCONSPIRATOR #3 ....................18**

**III. Conclusion ....................19**

**Proposed Detention Orders**


1. **JUAN JARMON ........................................................................ 20**
2. **DAMON EDWARDS ................................................................... 24**
3. **EDWARD STINSON ................................................................... 28**
4. **DONTA EDWARDS ................................................................... 32**
5. **RAHEEN BUTLER ..................................................................... 36**
6. **MICHAEL FERRELL .................................................................. 40**
7. **DOTTIE GOOD .......................................................................... 44**
8. **TAFT HARRIS, JR ...................................................................... 48**
9. **STEVEN THOMPSON ................................................................ 52**
10. **STEPHEN DAWKINS, SR ........................................................... 56**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 14-323** |
| **JUAN JARMON, et al.** | : | |

## GOVERNMENT'S OMNIBUS MOTION FOR PRETRIAL DETENTION

The defendants charged in this case all played integral roles in a large-scale drug trafficking group that for years terrorized residents of a North Philadelphia low-income housing project. The group sold crack cocaine 24 hours a day, 7 days a week, employing a large network of supervisors, sellers, lookouts, and suppliers. The drug trafficking group made money and protected its operations by, among other means, engaging in acts of intimidation, threats, and violence and preying on the financial weakness and vulnerability of persons, such as drug users and addicts, single mothers, young women, juveniles, the mentally ill, and those living in poverty. This group employs a "no snitching" policy. For example, when one female resident told others that this group sold drugs, one of the group's leaders, defendant JUAN JARMON, stated:

> Yeah, she don't understand how this sh*t go down around here. She's not from around, I'm gonna get her, I'm gonna get her hurt. I'm a really get her hurt. I'm really bout to get her hurt. I'm a find, I'm a get like six people real fast, and then I'm a bring them up there. I'm a make them stand in front of her door. . . . I'm getting six people to beat her the f*ck up tonight. Umm, she getting her *ss whopped tonight, I ain't playin'.

Later that night, the female resident was physically assaulted by JARMON.

After an extensive federal investigation that involved wiretaps, controlled drug buys, and undercover operations, each defendant is being charged with, among other crimes, conspiracy to distribute 280 grams or more of crack cocaine. The conspiracy charge carries a mandatory minimum sentence of 10 years in prison, and some defendants face a mandatory minimum of 20 years based on their criminal histories. All but one defendant has at least one prior criminal

conviction related to drug crimes. The strength and nature of this case, combined with the large-scale drug trafficking and violence associated with this group, make each of these defendants both a danger to the community and a risk of flight.

There is a statutory presumption of detention, and no defendant in this case can overcome this presumption. Because no condition or combination of conditions will reasonably assure the defendants' appearance as required or the safety of the community, the government moves pursuant to 18 U.S.C. § 3142(e) and (f) for detention hearings and pretrial detention for each of the defendants.

## I. THE FACTS:

In support of this motion, the government makes the following representations and proposed findings of fact:

### A. Probable Cause And The Evidence In This Case:

1. On February 8, 2017, a grand jury returned a 48-count Indictment charging 13 members of the JARMON/EDWARDS drug trafficking group with federal drug trafficking crimes. There is probable cause to believe that each of the defendants have violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), as charged in the Indictment. In addition, various defendants were charged with substantive counts related to the charged drug trafficking conspiracy, including distribution of crack cocaine, distribution of crack cocaine in a drug-free zone (public housing), unlawful use of a communication facility in furtherance of a drug felony, and maintaining a drug house. Every defendant faces a minimum mandatory sentence of 10 years in prison (some face a mandatory 20 years), and a maximum sentence of life imprisonment. All the charges and statutory penalties are organized by defendant in Exhibit A, attached to this motion.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and

lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

**JARMON/EDWARDS DTG and Roles of the Defendants**

3. The drug trafficking group was led by JUAN JARMON and DAMON EDWARDS, and at times EDWARD STINSON and DONTA EDWARDS, and members sold crack cocaine 24 hours a day, 7 days a week, in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia, employing a large network of supervisors, sellers, lookouts, and suppliers. Blumberg was a public housing facility that provided housing to low income residents and contained two children's playgrounds. During the course of the conspiracy, DTG members supplied over $1,000,000 of crack cocaine to the streets of this neighborhood.

4. Defendants JUAN JARMON and DAMON EDWARDS, along with defendants EDWARD STINSON and DONTA EDWARDS, are charged as the leaders of this drug trafficking group. Among other duties, these defendants purchased bulk crack and cocaine, cooked and packaged crack cocaine into bundles, sold crack cocaine to other drug traffickers and drug users, hired, fired, and supervised shift sellers and lookouts, secured apartment space and stash locations for their members, supplied bundles of crack cocaine to shift sellers, collected

drug proceeds from shift sellers, levied taxes on members and customers, and provided protection from other drug trafficking groups.

5. Defendants RAHEEN BUTLER, MICHAEL FERRELL, DOTTIE GOOD, TAFT HARRIS, and STEVEN THOMPSON were shift sellers for the drug trafficking group. Shift sellers were the daily workers employed by the leaders to sell crack cocaine in the locations controlled by the group. Shift sellers typically worked a day shift (8am to 4pm), evening shift (4pm to midnight), or overnight shift (midnight to 8am), sometimes selling over $2,000 of crack cocaine per shift.

6. Defendants STEPHEN DAWKINS, COCONSPIRATOR #1, COCONSPIRATOR #2, and COCONSPIRATOR #3 were lookouts for the drug trafficking group. Lookouts assisted other members of the group by alerting them to the presence of law enforcement in the area and at times locating, identifying, and directing customers to the shift sellers.

7. Members of the JARMON/EDWARDS DTG engaged in acts of intimidation, threats, and violence, possessed firearms and other weapons, and preyed on the financial weakness and vulnerability of persons, such as drug users and addicts, single mothers, young women, juveniles, the mentally ill, and those living in poverty, in order to further the interests of the DTG.

**B. <u>Maximum Penalties</u>**

The following statutory maximum and mandatory minimum sentences apply to the charges in this Indictment:

**Conspiracy to distribute 280 grams or more of cocaine base (“crack”), in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)**

Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if two prior felony drug convictions), at least 5 years (10 years if a prior felony drug conviction) to lifetime supervised release, a $10,000,000 fine ($20,000,000 if a prior felony drug conviction), and a $100 special assessment.

**Distribution and possession with intent to distribute less than 28 grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C)**

Maximum term of imprisonment of 20 years (30 years if a prior felony drug conviction), at least 3 years (6 years if a prior felony drug conviction) to lifetime supervised release, a $1,000,000 fine ($2,000,000 if a prior felony drug conviction), and a $100 special assessment.

**Distribution and possession with intent to distribute less than 28 grams of cocaine base ("crack") within 1,000 feet of public housing, in violation 21 U.S.C. §§ 860(a), 841(a)(1), (b)(1)(C)**

Maximum term of imprisonment of 40 years (60 years if a prior felony drug conviction), with a mandatory minimum term of imprisonment of one year, at least 6 years (12 years if a prior felony drug conviction) to lifetime supervised release, a $2,000,000 fine ($4,000,000 if a prior felony drug conviction), and a $100 special assessment.

**Unlawful use of a communication facility in furtherance of a drug felony, in violation of 21 U.S.C. § 843(b)**

Maximum term of imprisonment of 4 years (8 years if a prior felony drug conviction), one year of supervised release (3 years if a prior felony drug conviction), a $250,000 fine, and a $100 special assessment.

**Maintaining a drug house, in violation of 21 U.S.C. § 856**

Maximum term of imprisonment of 20 years, 3 years of supervised release; $500,000 fine, and $100 special assessment.

### C. <u>Danger to the Community</u>

The strength and nature of the case against these defendants, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that that they are a danger to the community. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs.

Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government. This DTG employs a "no snitching" policy that endangers any person who speaks with law enforcement about the drug trafficking activities of the group. Although the government will not disclose the names of cooperating witnesses at this stage, it is likely that the defendants will be able to discern who is cooperating from the indictment. The maximum penalties described above provide each of the charges defendants with a powerful incentive to retaliate against these witnesses. Moreover, the fact that many of these defendants committed the charged crimes while on probation for other offenses makes it clear that non-custodial supervision does not deter their criminal conduct and that pretrial detention is necessary.

**D. <u>Serious Flight Risk</u>**

Multiple factors, including the strong likelihood that the defendants will be sent to prison for a long period of time, make these defendants a flight risk. Each defendant faces high mandatary minimum penalties if convicted, which are much more severe penalties than they have ever faced before in state court and provide them with a strong incentive to flee such penalties. In addition, the JARMON/EDWARDS DTG generated a significant amount of money, much of which has not been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendants' ability to flee.

Although each defendant in the JARMON/EDWARDS DTG has ties to the Eastern District of Pennsylvania, they have not been sufficient to prevent them from committing drug trafficking crimes. Each lived in and around Blumberg during the course of the drug trafficking conspiracy. Today, three of the defendants are incarcerated in state prison and the remaining defendants still live in the area of North Philadelphia, a short distance from the public housing

projects where they used to conduct their drug trafficking activities. Each of the defendants appear to be lifelong residents of Philadelphia and have friends, relatives and/or associates in the area. However, these ties have served only to empower them to sell drugs out in the open without fear of resistance from the community and prosecution by law enforcement. The level of drug sales in this community has never been significantly impacted by local arrests. If one DTG member got arrested, another simply took his place. If a member returned from prison, he resumed his activity upon his return. Moreover, during the course of the charged conspiracy, each of these defendants either ran or were employed by this DTG, and drug trafficking proceeds were their primary source of income.

**E. <u>Rebuttable Presumption</u>**

As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. No defendant can rebut this presumption.

## II. BACKGROUND OF DEFENDANTS AND COCONSPIRATORS

**D-1:** **JUAN JARMON, a/k/a "J," a/k/a "Yizzo"**
Address: [redacted] Philadelphia, PA
Custody Location: [redacted]
Age: 30 years old
Criminal history:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| Philadelphia (CP-51-CR-0207701-2005) | Drug Trafficking | 01/20/2005 | 01/03/2006 | 4 yrs probation |
| Philadelphia (CP-51-CR-1300501-2006) | Drug Trafficking, Conspiracy | 05/18/2005 | 01/22/2008 | 11 ½ - 23 mths prison, 5 yrs probation |

JUAN JARMON was one of the leaders of this DTG, a large-scale drug trafficking group that terrorized the neighborhood and poisoned the streets with deadly drugs; he supervised the shift sellers and arranged purchases of bulk narcotics; he was directly involved in the use and threat of violence against women and others who threatened his DTG; and he has a significant criminal history as a recidivist drug trafficker, which includes two prior convictions for drug trafficking resulting in at least six criminal history points. Based on his prior felony drug convictions, JARMON could face a mandatory minimum 20 years or life in prison.

**D-2:** **DAMON EDWARDS, a/k/a "Boo," a/k/a "Boo-Boo"**
Address: [redacted] Philadelphia, PA
Age: 31 years old
Criminal history:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| Philadelphia (CP-51-CR-0016624-2008) | Drug Trafficking | 07/23/2008 | 12/23/2010 | 2 yrs probation |
| Philadelphia (CP-51-CR-0007777-2010) | Drug Trafficking | 04/01/2010 | 12/23/2010 | 2 yrs probation |

DAMON EDWARDS was one of the leaders of this large-scale DTG. He supervised the shift sellers, resupplied shift sellers as needed, collected and counted drug proceeds, arranged sales and purchases of bulk narcotics, and provided regular counter-surveillance to avoid law enforcement detection. EDWARDS was audio/video recorded in a controlled drug transaction for bulk crack cocaine and was intercepted on dozens of phone calls discussing drug trafficking activities. He has two prior drug trafficking convictions. Based on his prior felony drug convictions, EDWARDS could face a mandatory minimum 20 years or life in prison.

**D-3:** **EDWARD STINSON, a/k/a "E-Black"**
Address: [redacted] Philadelphia, PA
Custody Location: [redacted]
Age: 27 years old
Criminal History:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| Philadelphia (CP-51-CR-0005019-2015) | Intimidation of Witness | 04/15/2015 | 06/10/2016 | 1 - 2 yrs prison |
| Philadelphia (MC-51-CR-0001952-2012) | Possession of Marijuana | 01/13/2012 | 06/20/2012 | 3 - 12 mths prison, 12 mths probation |
| Philadelphia (MC-51-CR-0015039-2012) | DUI | 04/14/2012 | 11/13/2012 | 6 mths probation |
| Lawrence (CP-37-CR-0000020-2008) | Simple Assault | 10/04/2007 | 06/12/2008 | 253 days - 17 mths prison |
| Philadelphia (juvenile) | PWID and agg assault | 2005-06 | | |

EDWARD STINSON was incarcerated in state prison at various times during the course of the conspiracy, but when not in prison, STINSON was one of the leaders of this large-scale DTG. He gave JARMON permission to operate the DTG in late 2012, and then evicted them in early to mid 2014 after a dispute over drug proceeds. He has an extensive criminal history, including assaults and witness intimidation. STINSON also faces drug trafficking charges (and is the lead defendant) in a related indictment, Criminal No. 17-71. STINSON faces a mandatory minimum 10 years in prison in both cases.

**D-4:** **DONTA EDWARDS, a/k/a "Boog"**
Address: [redacted] Philadelphia, PA
Custody Location: [redacted]
Age: 28 years old
Criminal history:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| Philadelphia (CP-51-CR-0005465-2015) | Drug Trafficking | 04/23/2015 | 02/23/2016 | 11 ½ - 23 mths prison, 5 yrs probation |
| Philadelphia (CP-51-CR-0011031-2010) | Drug Trafficking | 03/05/2010 | 03/03/2011 | 2 - 6 yrs prison |

| | | | | |
|---|---|---|---|---|
| Philadelphia (CP-51-CR-0009168-2007) | Drug Trafficking | 04/11/2007 | 05/15/2008 | 2 - 4 yrs prison, 4 yrs probation |

DONTA EDWARDS was one of the leaders of this large-scale DTG. He supervised the shift sellers, and he has a significant criminal history as a recidivist drug trafficker, which includes two prior convictions for drug trafficking resulting in at least six criminal history points. Based on his prior felony drug convictions, EDWARDS could face a mandatory minimum 20 years or life in prison.

**D-5:** **RAHEEN BUTLER, a/k/a "Raheem," a/k/a "Riddles," a/k/a "Ra-Ra"**
Address: [redacted] Philadelphia, PA
Age: 33 years old
Criminal history:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| Philadelphia (CP-51-CR-0312531-2003) | Drug Trafficking | 02/03/2003 | 10/27/2003 | 2 - 5 yrs prison |

RAHEEN BUTLER played an integral role as a shift seller for this large-scale DTG for at least a month, and as shift seller, he handled large quantities of crack cocaine and cash proceeds, and assisted in the supervision of the lookouts on his shift. BUTLER was intercepted on numerous phone calls discussing drug trafficking activities, including conversations with JARMON about drug proceeds collected from the shift sellers. Based on his prior felony drug conviction, BUTLER could face a mandatory minimum 20 years in prison.

**D-6:** **MICHAEL FERRELL, a/k/a "Mike"**
Address: [redacted] Philadelphia, PA
Age: 25 years old
Criminal history:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| Philadelphia (CP-51-CR-0005217-2011) | Drug Possession, Conspiracy | 02/15/2011 | 12/06/2012 | 1 yr probation |

MICHAEL FERRELL played an integral role as a shift seller for this large-scale DTG, and as shift seller, he handled large quantities of crack cocaine and cash proceeds, and assisted in the supervision of the lookouts on his shift. FERRELL was audio/video recorded in a controlled drug transaction and was intercepted on numerous phone calls discussing drug trafficking activities, including conversations with JARMON about drugs and drug proceeds collected and passed among shift sellers. His criminal history includes a drug conviction in 2012 for which he was on probation through 2013. Based on this prior felony drug conviction, FERRELL could face a mandatory minimum 20 years in prison.

**D-7:** **DOTTIE GOOD, a/k/a "Dreds," a/k/a "Dots"**
Address: [redacted] Philadelphia, PA
Age: 30 years old
Criminal history:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| Philadelphia (CP-51-CR-0011651-2015) | Drug Trafficking | 09/30/2015 | 01/27/2016 | 11 ½ - 23 mths prison, 5 yrs probation |
| Philadelphia (CP-51-CR-0011651-2015) | Drug Trafficking | 12/27/2014 | 03/16/2015 | 4 yrs probation |
| Philadelphia (MC-51-CR-0049540-2011) | Possession of Marijuana | 11/22/2011 | 01/14/2013 | no further penalty |
| Philadelphia (CP-51-MD-0000064-2013) | Contempt – Disobedience or Neglect of Officers | | 01/04/2013 | 10 - 20 days prison |
| Philadelphia (MC-51-CR-0024782-2012) | Drug Trafficking | 06/17/2012 | 01/02/2013 | 18 mths probation |

DOTTIE GOOD played an integral role as a shift seller for this large-scale DTG, and as shift seller, she handled large quantities of crack cocaine and cash proceeds, and assisted in the supervision of the lookouts on his shift. GOOD was audio/video recorded in controlled drug

transactions selling quantities of crack cocaine. She has a significant criminal history as a recidivist drug trafficker, which includes three prior convictions for drug trafficking and at least seven criminal history points. Based on her prior felony drug convictions, GOOD could face a mandatory minimum 20 years or life in prison.

**D-8:** **TAFT HARRIS, JR., a/k/a "Taff," a/k/a "Taz"**
Address: [redacted] Philadelphia, PA
Age: 27 years old
Criminal history: No convictions

TAFT HARRIS played an integral role as a shift seller for this large-scale DTG, and as shift seller, he handled large quantities of crack cocaine and cash proceeds, and assisted in the supervision of the lookouts on his shift. HARRIS was audio/video recorded in a controlled drug transaction and was intercepted on numerous phone calls discussing drug trafficking activities, including conversations with JARMON and EDWARDS about drug quantities sold and the use of lookouts on his shift. HARRIS faces a mandatory minimum 10 years in prison based on the charges in this case.

**D-9:** **STEVEN THOMPSON, a/k/a "Tall Steve"**
Address: [redacted] Philadelphia, PA
Age: 34 years old
Criminal history:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| Philadelphia (MC-51-CR-12956-2010) | Drug Possession | 03/28/2010 | 05/03/2010 | no further penalty |
| Philadelphia (MC-51-CR-13093-2010) | Drug Possession (marijuana) | 03/29/2010 | 05/03/2010 | no further penalty |

STEVEN THOMPSON played an integral role as a shift seller for this large-scale DTG, and as shift seller, he handled large quantities of crack cocaine and cash proceeds, and assisted in the supervision of the lookouts on his shift. THOMPSON was audio/video recorded in a controlled drug transaction and identified as a shift seller by JARMON and FARRELL on

intercepted phone calls. Based on his prior felony drug convictions, THOMPSON could face a mandatory minimum 20 years or life in prison.

**D-10:** **STEVEN DAWKINS, SR, a/k/a "Diamond"**
Address: [redacted] Philadelphia, PA
Age: 52 years old
Criminal history:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| Philadelphia (MC-51-CR-0011737-2015) | Drug Possession | 04/18/2015 | 05/19/2015 | 6 mths probation |
| Philadelphia (MC-51-CR-0022478-2014) | Drug Possession | 07/04/2014 | 11/04/2014 | |
| Philadelphia (MC-51-CR-0013093-2010) | Possession of Marijuana | 03/29/2010 | 05/03/2010 | 1 yr probation |
| Philadelphia (CP-51-CR-0012956-2010) | Drug Possession | 03/28/2010 | 05/03/2010 | no further penalty |

STEPHEN DAWKINS was a primary lookout for this large-scale DTG, and he has an extensive criminal history that includes no less than four drug convictions. DAWKINS faces a mandatory minimum 10 years in prison based on the charges in this case and could face a mandatory 20 years based on his prior felony drug convictions.

**COCONSPIRATOR #1**
Criminal history:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| | Drug Possession | | | |
| | Aggravated Assault, Simple Assault | | | |
| | Drug Trafficking | | | |

| | | | | |
|---|---|---|---|---|
| | Firearms Without License | | | |
| | Attempted Theft, Conspiracy | | | |
| | Drug Possession | | | |
| | Theft, Conspiracy | | | |

COCONSPIRATOR #1 was a primary lookout for this large-scale DTG, and he has an extensive criminal history that includes convictions for drug trafficking, aggravated assault, firearms, and theft, resulting in at least six criminal history points.

**COCONSPIRATOR #2**
Criminal history:

| Jurisdiction | Crimes of Conviction | Arrest Date | Sentence Date | Sentence |
|---|---|---|---|---|
| | Drug Trafficking | | | |
| | Drug Trafficking | | | |
| | Obstruct/ Impede Justice - Picketing | | | |
| | Simple Assault | | | |
| | Drug Trafficking | | | |
| | Simple Assault, Terroristic Threats | | | |

COCONSPIRATOR #2 was a primary lookout for this large-scale DTG for at least a month, and he has an extensive criminal history, both recent and historical, that includes three

drug trafficking convictions and multiple assault convictions resulting in at least 16 criminal history points, placing him into the highest possible criminal history category.

**COCONSPIRATOR #3**

COCONSPIRATOR #3 was a primary lookout for this large-scale DTG and maintained a drug house that was used by shift sellers to sell large quantities of crack cocaine. COCONSPIRATOR #3 was audio/video recorded in controlled drug transactions involving his apartment and identified as a lookout on an intercepted phone call.

## III. CONCLUSION

When all these factors are viewed in light of the substantial sentences each of the defendants face if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendants as required and the safety of the community. For these reasons, each of the defendants should be detained pending trial.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney

____/s/______________________
JEROME M. MAIATICO
KATAYOUN COPELAND
Assistant United States Attorneys

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 17-72** |
| **JUAN JARMON (1)** | **:** | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ___ day of ______________, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), and related charges as charged in the Indictment filed on February 8, 2017.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA

conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

3. JUAN JARMON was one of the leaders of this large-scale DTG. He supervised the shift sellers and arranged purchases of bulk narcotics; he was directly involved in the use and threat of violence against women and others who threatened his DTG; and he has a significant criminal history as a recidivist drug trafficker, which includes two prior convictions for drug trafficking resulting in at least six criminal history points. Based on his prior felony drug convictions, JARMON could face a mandatory minimum 20 years or life in prison.

4. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs. The strength and nature of the case against the defendant, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that the defendant is a danger to the community.

5. Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government.

6. Multiple factors, including the strong likelihood that the defendant will be sent to prison for a long period of time, make the defendant a flight risk. In addition, the JARMON/EDWARDS DTG generated a significant amount of money, much of which has not been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendant's ability to flee.

7. Although the defendant has ties to the Eastern District of Pennsylvania, they have not been sufficient enough to prevent him from committing drug trafficking crimes.

8. As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. The defendant cannot rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or servicing sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a Court of the United States, or on request of an attorney for the government, the person charge of the corrections facility in which the defendant is confirmed deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

____________________________________

HONORABLE
*United States Magistrate Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 17-72** |
| **DAMON EDWARDS (2)** | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ___ day of ______________, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), and related charges as charged in the Indictment filed on February 8, 2017.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA

conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

3. DAMON EDWARDS was one of the leaders of this large-scale DTG. He supervised the shift sellers, resupplied shift sellers as needed, collected and counted drug proceeds, arranged sales and purchases of bulk narcotics, and provided regular counter-surveillance to avoid law enforcement detection. EDWARDS was audio/video recorded in a controlled drug transaction for bulk crack cocaine and was intercepted on dozens of phone calls discussing drug trafficking activities. He has two prior drug trafficking convictions. Based on his prior felony drug convictions, EDWARDS could face a mandatory minimum 20 years or life in prison.

4. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs. The strength and nature of the case against the defendant, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that the defendant is a danger to the community.

5. Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government.

6. Multiple factors, including the strong likelihood that the defendant will be sent to prison for a long period of time, make the defendant a flight risk. In addition, the JARMON/EDWARDS DTG generated a significant amount of money, much of which has not been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendant's ability to flee.

7. Although the defendant has ties to the Eastern District of Pennsylvania, they have not been sufficient enough to prevent him from committing drug trafficking crimes.

8. As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. The defendant cannot rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or servicing sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a Court of the United States, or on request of an attorney for the government, the person charge of the corrections facility in which the defendant is confirmed deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

____________________________________
HONORABLE
*United States Magistrate Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 17-72** |
| **EDWARD STINSON (3)** | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ___ day of ______________, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), and related charges as charged in the Indictment filed on February 8, 2017.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA

conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

3. EDWARD STINSON was incarcerated in state prison at various times during the course of the conspiracy, but when not in prison, STINSON was one of the leaders of this large-scale DTG. He gave JARMON permission to operate the DTG in late 2012, and then evicted them in early to mid 2014 after a dispute over drug proceeds. He has an extensive criminal history, including assaults and witness intimidation. STINSON also faces drug trafficking charges (and is the lead defendant) in a related indictment, Criminal No. 17-71. STINSON faces a mandatory minimum 10 years in prison in both cases.

4. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs. The strength and nature of the case against the defendant, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that the defendant is a danger to the community.

5. Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government.

6. Multiple factors, including the strong likelihood that the defendant will be sent to prison for a long period of time, make the defendant a flight risk. In addition, the JARMON/EDWARDS DTG generated a significant amount of money, much of which has not been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendant's ability to flee.

7. Although the defendant has ties to the Eastern District of Pennsylvania, they have not been sufficient enough to prevent him from committing drug trafficking crimes.

8. As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. The defendant cannot rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or servicing sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a Court of the United States, or on request of an attorney for the government, the person charge of the corrections facility in which the defendant is confirmed deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

______________________________________

HONORABLE
*United States Magistrate Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 17-72** |
| **DONTA EDWARDS (4)** | **:** | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ___ day of _______________, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), and related charges as charged in the Indictment filed on February 8, 2017.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA

conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

3. DONTA EDWARDS was one of the leaders of this large-scale DTG. He supervised the shift sellers, and he has a significant criminal history as a recidivist drug trafficker, which includes two prior convictions for drug trafficking resulting in at least six criminal history points. Based on his prior felony drug convictions, EDWARDS could face a mandatory minimum 20 years or life in prison.

4. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs. The strength and nature of the case against the defendant, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that the defendant is a danger to the community.

5. Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government.

6. Multiple factors, including the strong likelihood that the defendant will be sent to prison for a long period of time, make the defendant a flight risk. In addition, the

JARMON/EDWARDS DTG generated a significant amount of money, much of which has not been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendant's ability to flee.

7. Although the defendant has ties to the Eastern District of Pennsylvania, they have not been sufficient enough to prevent him from committing drug trafficking crimes.

8. As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. The defendant cannot rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or servicing sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confirmed deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

____________________________________

HONORABLE
*United States Magistrate Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 17-72** |
| **RAHEEN BUTLER (5)** | **:** | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ___ day of _______________, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), and related charges as charged in the Indictment filed on February 8, 2017.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA

conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

3. RAHEEN BUTLER played an integral role as a shift seller for this large-scale DTG for at least a month, and as shift seller, he handled large quantities of crack cocaine and cash proceeds, and assisted in the supervision of the lookouts on his shift. BUTLER was intercepted on numerous phone calls discussing drug trafficking activities, including conversations with JARMON about drug proceeds collected from the shift sellers. Based on his prior felony drug conviction, BUTLER could face a mandatory minimum 20 years in prison.

4. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs. The strength and nature of the case against the defendant, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that the defendant is a danger to the community.

5. Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government.

6. Multiple factors, including the strong likelihood that the defendant will be sent to prison for a long period of time, make the defendant a flight risk. In addition, the JARMON/EDWARDS DTG generated a significant amount of money, much of which has not been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendant's ability to flee.

7. Although the defendant has ties to the Eastern District of Pennsylvania, they have not been sufficient enough to prevent him from committing drug trafficking crimes.

8. As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. The defendant cannot rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or servicing sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confirmed deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

____________________________________

HONORABLE
*United States Magistrate Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 17-72** |
| **MICHAEL FERRELL (6)** | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ___ day of ______________, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), and related charges as charged in the Indictment filed on February 8, 2017.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA

conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

3. MICHAEL FERRELL played an integral role as a shift seller for this large-scale DTG, and as shift seller, he handled large quantities of crack cocaine and cash proceeds, and assisted in the supervision of the lookouts on his shift. FERRELL was audio/video recorded in a controlled drug transaction and was intercepted on numerous phone calls discussing drug trafficking activities, including conversations with JARMON about drugs and drug proceeds collected and passed among shift sellers. His criminal history includes a drug conviction in 2012 for which he was on probation through 2013. Based on this prior felony drug conviction, FERRELL could face a mandatory minimum 20 years in prison.

4. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs. The strength and nature of the case against the defendant, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that the defendant is a danger to the community.

5. Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of

violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government.

6. Multiple factors, including the strong likelihood that the defendant will be sent to prison for a long period of time, make the defendant a flight risk. In addition, the JARMON/EDWARDS DTG generated a significant amount of money, much of which has not been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendant's ability to flee.

7. Although the defendant has ties to the Eastern District of Pennsylvania, they have not been sufficient enough to prevent him from committing drug trafficking crimes.

8. As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. The defendant cannot rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or servicing sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a Court of the United States, or on request of an attorney for the government, the person

charge of the corrections facility in which the defendant is confirmed deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

HONORABLE
*United States Magistrate Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 17-72** |
| **DOTTIE GOOD (7)** | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ___ day of ______________, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), and related charges as charged in the Indictment filed on February 8, 2017.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA

conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

3. DOTTIE GOOD played an integral role as a shift seller for this large-scale DTG, and as shift seller, she handled large quantities of crack cocaine and cash proceeds, and assisted in the supervision of the lookouts on his shift. GOOD was audio/video recorded in controlled drug transactions selling quantities of crack cocaine. She has a significant criminal history as a recidivist drug trafficker, which includes three prior convictions for drug trafficking and at least seven criminal history points. Based on her prior felony drug convictions, GOOD could face a mandatory minimum 20 years or life in prison.

4. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs. The strength and nature of the case against the defendant, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that the defendant is a danger to the community.

5. Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government.

6. Multiple factors, including the strong likelihood that the defendant will be sent to prison for a long period of time, make the defendant a flight risk. In addition, the JARMON/EDWARDS DTG generated a significant amount of money, much of which has not been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendant's ability to flee.

7. Although the defendant has ties to the Eastern District of Pennsylvania, they have not been sufficient enough to prevent him from committing drug trafficking crimes.

8. As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. The defendant cannot rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or servicing sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a Court of the United States, or on request of an attorney for the government, the person charge of the corrections facility in which the defendant is confirmed deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

____________________________________

HONORABLE
*United States Magistrate Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 17-72** |
| **TAFT HARRIS, JR. (8)** | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ___ day of ______________, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), and related charges as charged in the Indictment filed on February 8, 2017.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA

conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

3. TAFT HARRIS played an integral role as a shift seller for this large-scale DTG, and as shift seller, he handled large quantities of crack cocaine and cash proceeds, and assisted in the supervision of the lookouts on his shift. HARRIS was audio/video recorded in a controlled drug transaction and was intercepted on numerous phone calls discussing drug trafficking activities, including conversations with JARMON and EDWARDS about drug quantities sold and the use of lookouts on his shift. HARRIS faces a mandatory minimum 10 years in prison based on the charges in this case.

4. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs. The strength and nature of the case against the defendant, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that the defendant is a danger to the community.

5. Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government.

6. Multiple factors, including the strong likelihood that the defendant will be sent to prison for a long period of time, make the defendant a flight risk. In addition, the JARMON/EDWARDS DTG generated a significant amount of money, much of which has not been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendant's ability to flee.

7. Although the defendant has ties to the Eastern District of Pennsylvania, they have not been sufficient enough to prevent him from committing drug trafficking crimes.

8. As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. The defendant cannot rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or servicing sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a Court of the United States, or on request of an attorney for the government, the person charge of the corrections facility in which the defendant is confirmed deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

____________________________________

HONORABLE
*United States Magistrate Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 17-72** |
| **STEVEN THOMPSON (9)** | **:** | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ___ day of ______________, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), and related charges as charged in the Indictment filed on February 8, 2017.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA

conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

3. STEVEN THOMPSON played an integral role as a shift seller for this large-scale DTG, and as shift seller, he handled large quantities of crack cocaine and cash proceeds, and assisted in the supervision of the lookouts on his shift. THOMPSON was audio/video recorded in a controlled drug transaction and identified as a shift seller by JARMON and FARRELL on intercepted phone calls. Based on his prior felony drug convictions, THOMPSON could face a mandatory minimum 20 years or life in prison.

4. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs. The strength and nature of the case against the defendant, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that the defendant is a danger to the community.

5. Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government.

6. Multiple factors, including the strong likelihood that the defendant will be sent to prison for a long period of time, make the defendant a flight risk. In addition, the JARMON/EDWARDS DTG generated a significant amount of money, much of which has not been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendant's ability to flee.

7. Although the defendant has ties to the Eastern District of Pennsylvania, they have not been sufficient enough to prevent him from committing drug trafficking crimes.

8. As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. The defendant cannot rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or servicing sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a Court of the United States, or on request of an attorney for the government, the person charge of the corrections facility in which the defendant is confirmed deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

________________________________________

HONORABLE
*United States Magistrate Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 17-72** |
| **STEPHEN DAWKINS, SR. (10)** | **:** | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ___ day of ______________, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 21, United States Code, Section 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")), and related charges as charged in the Indictment filed on February 8, 2017.

2. The evidence in this case is strong. The Indictment charges members of the JARMON/EDWARDS Drug Trafficking Group (DTG), including leaders, shift sellers, and lookouts, with selling crack cocaine in and around the Norman Blumberg Apartment Complex (Blumberg) in North Philadelphia. During the course of the investigation, the FBI and DEA

conducted court-approved TIII wire intercepts of phone calls between members of the DTG, which led to hundreds of relevant phone calls where members discuss their drug trafficking activities. Law enforcement also made dozens of controlled purchases of drugs from members of the DTG, using cooperating sources and undercover officers, during which the members were surveilled, audiotaped and/or videotaped by the FBI and DEA. Each charged member of the DTG is identified on intercepted phone calls and/or captured on audio/video during controlled drug purchases. In addition, several individuals, including customers and other sources, are cooperating with the investigation and ready to testify about the drug trafficking activities of these DTG members, including the DTG's use of intimidation, threats, and violence.

3. STEPHEN DAWKINS was a primary lookout for this large-scale DTG, and he has an extensive criminal history that includes no less than four drug convictions. DAWKINS faces a mandatory minimum 10 years in prison based on the charges in this case and could face a mandatory 20 years based on his prior felony drug convictions.

4. The JARMON/EDWARDS DTG is a large-scale drug trafficking organization that terrorized the Blumberg neighborhood and poisoned the streets with deadly drugs. The strength and nature of the case against the defendant, which includes members of the DTG engaging in acts intimidation, threats, and violence, establishes that the defendant is a danger to the community.

5. Moreover, the defendants' pretrial detention is necessary to protect the safety of cooperating witnesses and other potential witnesses who previously faced threats of violence from JARMON/EDWARDS DTG, and now may face threats of violence because of their cooperation with the government.

6. Multiple factors, including the strong likelihood that the defendant will be sent to prison for a long period of time, make the defendant a flight risk. In addition, the JARMON/EDWARDS DTG generated a significant amount of money, much of which has not

been located or seized by law enforcement. This illicit wealth, along with the large network of co-conspirators associated with this DTG, increases the defendant's ability to flee.

7. Although the defendant has ties to the Eastern District of Pennsylvania, they have not been sufficient enough to prevent him from committing drug trafficking crimes.

8. As there is probable cause to believe that each of the defendants has committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume—subject to rebuttal by the defendant—that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of each of the defendants as required. The defendant cannot rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or servicing sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a Court of the United States, or on request of an attorney for the government, the person charge of the corrections facility in which the defendant is confirmed deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

____________________________________

HONORABLE
*United States Magistrate Judge*

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Omnibus Motion for Pretrial Detention and Proposed Orders will be/has been served by hand delivery and/or email on defense counsel for each defendant prior to the detention hearing.

/s/ Jerome M. Maiatico
JEROME MAIATICO
KATAYOUN COPELAND
Assistant United States Attorneys

Date: February 24, 2017

# Exhibit A

**U.S. v. Juan Jarmon, et al.**
**Criminal No. 17-72**
**Charges and Maximum Penalties, By Defendant**

| DEFENDANT | AGE | CHARGES | TOTAL MAX PENALTIES |
|---|---|---|---|
| JUAN JARMON (1) | 30 | Count 1 – 21 U.S.C. § 846 (conspiracy to distribute 280 grams or more of cocaine base (“crack”)) – 1 count; Counts 2 and 19 – 21 U.S.C. § 843(b) (unlawful use of a communication facility in furtherance of a drug felony) – 2 counts; Counts 7, 9, 11, 13, 15, 17 and 22 – 21 U.S.C. § 841(a)(1) (distribution of cocaine base (“crack”)) – 7 counts; Counts 20, 24, 26, 28, 30, 32, and 36 – 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine base (“crack”)) – 7 counts; Counts 8, 10, 12, 14, 16, 18 and 23 – 21 U.S.C. § 860(a) (distribution of cocaine base (“crack”) within 1,000 feet of public housing) – 7 counts; Counts 21, 25, 27, 29, 31, 33, and 37 – 21 U.S.C. § 860(a) (possession with intent to distribute cocaine base (“crack”) within 1,000 feet of public housing) – 7 counts | Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if two prior felony drug convictions), at least 6 years (12 years if a prior felony drug conviction) to lifetime supervised release, a $52,500,000 fine ($104,500,000 if a prior felony drug conviction), and a $3,100 special assessment |
| DAMON EDWARDS (2) | 31 | Count 1 – 21 U.S.C. § 846 (conspiracy to distribute 280 grams or more of cocaine base (“crack”)) – 1 count; Count 17 – 21 U.S.C. § 841(a)(1) (distribution of cocaine base (“crack”)) – 1 count; Count 18 – 21 U.S.C. § 860(a) (distribution of cocaine base (“crack”) within 1,000 feet of public housing) – 1 count; Count 36 – 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine base (“crack”)) – 1 count; Count 37 – 21 U.S.C. § 860(a) (possession with intent to distribute cocaine base (“crack”) within 1,000 feet of | Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if two prior felony drug convictions), at least 6 years (12 years if a prior felony drug conviction) to lifetime supervised release, a $16,000,000 fine ($22,000,000 if a prior felony |

| | | | |
|---|---|---|---|
| | | public housing) – 1 count | drug conviction), and a $500 special assessment |
| EDWARD STINSON (3) | 27 | <u>Count 1</u> – 21 U.S.C. § 846 (conspiracy to distribute 280 grams or more of cocaine base (“crack”)) – 1 count; <u>Count 2</u> – 21 U.S.C. § 843(b) (unlawful use of a communication facility in furtherance of a drug felony) – 1 count | Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if two prior felony drug convictions), at least 5 years (10 years if a prior felony drug conviction) to lifetime supervised release, a $10,250,000 fine ($20,250,000 if a prior felony drug conviction), and a $200 special assessment |
| DONTA EDWARDS (4) | 28 | <u>Count 1</u> – 21 U.S.C. § 846 (conspiracy to distribute 280 grams or more of cocaine base (“crack”)) – 1 count; <u>Count 40</u> – 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine base (“crack”)) – 1 count; <u>Count 41</u> – 21 U.S.C. § 860(a) (possession with intent to distribute cocaine base (“crack”) within 1,000 feet of public housing) – 1 count | Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if two prior felony drug convictions), at least 6 years (12 years if a prior felony drug conviction) to lifetime supervised release, a $13,000,000 fine ($26,000,000 if a prior felony drug conviction), and a $300 special assessment |
| RAHEEN BUTLER (5) | 33 | <u>Count 1</u> – 21 U.S.C. § 846 (conspiracy to distribute 280 grams or more of cocaine base (“crack”))- 1 count; <u>Count 19</u> – 21 U.S.C. § 843(b) (unlawful use of a communication facility in furtherance of a drug felony) – 1 count | Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if |

| | | | |
|---|---|---|---|
| | | | two prior felony drug convictions), at least 5 years (10 years if a prior felony drug conviction) to lifetime supervised release, a $10,250,000 fine ($20,250,000 if a prior felony drug conviction), and a $200 special assessment |
| MICHAEL FERRELL (6) | 25 | Count 1 – 21 U.S.C. § 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")) – 1 count;<br>Count 34 – 21 U.S.C. § 841(a)(1) (distribution of cocaine base ("crack")) – 1 count;<br>Count 35 – 21 U.S.C. § 860(a) (distribution of cocaine base ("crack") within 1,000 feet of public housing) – 1 count | Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if two prior felony drug convictions), at least 6 years (12 years if a prior felony drug conviction) to lifetime supervised release, a $13,000,000 fine ($26,000,000 if a prior felony drug conviction), and a $300 special assessment |
| DOTTIE GOOD (7) | 30 | Count 1 – 21 U.S.C. § 846 (conspiracy to distribute 280 grams or more of cocaine base ("crack")) – 1 count;<br>Counts 3 and 5 – 21 U.S.C. § 841(a)(1) (distribution of cocaine base ("crack")) – 2 counts;<br>Counts 4 and 6 – 21 U.S.C. § 860(a) (distribution of cocaine base ("crack") within 1,000 feet of public housing) – 2 counts | Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if two prior felony drug convictions), at least 6 years (12 years if a prior felony drug conviction) to lifetime supervised release, a $16,000,000 fine ($22,000,000 if a prior felony drug conviction), and a $500 |

| | | | |
|---|---|---|---|
| | | | special assessment |
| TAFT HARRIS, JR. (8) | 27 | Count 1 – 21 U.S.C. § 846 (conspiracy to distribute 280 grams or more of cocaine base (“crack”)) – 1 count;<br>Count 38 – 21 U.S.C. § 841(a)(1) (distribution of cocaine base (“crack”)) – 1 count;<br>Count 39 – 21 U.S.C. § 860(a) (distribution of cocaine base (“crack”) within 1,000 feet of public housing) – 1 count | Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if two prior felony drug convictions), at least 6 years (12 years if a prior felony drug conviction) to lifetime supervised release, a $13,000,000 fine ($26,000,000 if a prior felony drug conviction), and a $300 special assessment |
| STEVEN THOMPSON (9) | 34 | Count 1 – 21 U.S.C. § 846 (conspiracy to distribute 280 grams or more of cocaine base (“crack”)) – 1 count;<br>Count 44 – 21 U.S.C. § 841(a)(1) (distribution of cocaine base (“crack”)) – 1 count;<br>Count 45 – 21 U.S.C. § 860(a) (distribution of cocaine base (“crack”) within 1,000 feet of public housing) – 1 count | Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if two prior felony drug convictions), at least 6 years (12 years if a prior felony drug conviction) to lifetime supervised release, a $13,000,000 fine ($26,000,000 if a prior felony drug conviction), and a $300 special assessment |
| STEPHEN DAWKINS, SR (10) | 52 | Count 1 – 21 U.S.C. § 846 (conspiracy to distribute 280 grams or more of cocaine base (“crack”)) – 1 count | Life imprisonment, with a mandatory minimum term of imprisonment of 10 years (20 years if a prior felony drug conviction, and mandatory life if two prior felony drug |

| | | | |
|---|---|---|---|
| | | | convictions), at least 5 years (10 years if a prior felony drug conviction) to lifetime supervised release, a $10,000,000 fine ($20,000,000 if a prior felony drug conviction), and a $100 special assessment |