PD

373

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, . Case No. 2:17-cr-00072-PD
. -1
Plaintiff, . -3
. U.S. Courthouse
v. . 601 Market Street
. Philadelphia, PA 19106
JUAN JARMON, et al, .
.
Defendant. .
. August 7, 2018
. . . . . . . . . . . . . . . . 9:57 a.m.

FILED
AUG 14 2018
KATE BARKMAN, Clerk
By ____ Dep. Clerk

PRETRIAL MOTIONS HEARING
BEFORE THE HONORABLE PAUL S. DIAMOND
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff United States: | JEROME M. MAIATICO, ESQ.<br>U.S. ATTORNEY'S OFFICE<br>615 Chestnut Street, Suite 1250<br>Philadelphia, PA 19106 |
| For the Defendant Edward Stinson: | PAUL J. HETZNECKER, ESQ.<br>1420 Walnut Street, Suite 911<br>Philadelphia, PA 19102 |
| For the Defendant Juan Jarmon: | MAUREEN C. COGGINS, ESQ.<br>MAUREEN C. COGGINS, ATTORNEY AT LAW<br>509 Swede Street<br>Norristown, PA 19404 |
| Audio Operator: | BRIAN JOHNSON |
| Transcribed by: | DONNA MORRIS, Court Transcriber<br>Lawrence Court Transcription & Video<br>P.O. Box 530790<br>DeBary, FL 32753<br>833-800-LCTV |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

DH

# I N D E X


| | PAGE |
|---|---|
| DISCUSSION OF GOVERNMENT'S SECURITY MOTION | 3 |
| GOVERNMENT'S WITNESS: | |
| SCOTT BABER | |
| Direct examination by Mr. Maiatico | 9 |
| Cross-examination by Mr. Hetznecker | 13 |
| Cross-examination by Ms. Coggins | 14 |
| COURT RULING | 14 |
| CERTIFIED TRANSCRIBER'S CERTIFICATE | 16 |

| EXHIBITS FOR THE PLAINTIFF: | ID. | EVD. |
|---|---|---|
| Ex. 1 = photo | 4 | 4 |
| Ex. 2 = photo | 5 | 5 |

EXHIBITS FOR THE DEFENSE:
(NONE OFFERED)

(Court in session at 9:57 a.m.)

JUDGE PAUL S. DIAMOND: We are here to address the Government's security motion.

Mr. Maiatico.

MR. JEROME M. MAIATICO: Yes, Your Honor. The Government is moving for a secure courtroom in this case, 17-72. And the reason is there was -- it came to the Government's attention shortly after the July 6th pretrial motions hearing that happened in this courtroom that there was a photograph that was posted to a social media account, Instagram account, of this courtroom. And in that photograph, which I will pass up to the Court and make a part of the record, Your Honor, it was a posting that showed both defendants. It was a posting that in the photograph had a picture of the Defense counsel for Mr. Jarmon and also in the photograph were two deputy U.S. Marshals.

Of course, outside of this courtroom is a posting that says no video recordings are allowed as a rule in this courthouse and whoever took this photo violated that rule.

THE COURT: Well, there's a -- there's a -- an admonishment as one enters the building to that effect and our local rules prohibit broadcasting, filming, and recording in the courtroom. This picture -- I want to introduce it. Is there any objection to its introduction, counsel?

MR. PAUL J. HETZNECKER: No objection.

MS. MAUREEN C. COGGINS: No, Your Honor.

THE COURT: I wanted to introduce it, mark it Government 1.

MR. MAIATICO: I'm marking it Government Exhibit 1. And Your Honor, it's a black and white printout of that photograph from the Instagram account. I'll pass it up to the Court right now.

(Government Exhibit 1 received in Evidence = photo)

THE COURT: I have a copy of it. Why don't you give it to my deputy here. That will be fine.

MR. MAIATICO: All right. Thank you.

THE COURT: All right. Do you have any witnesses you wish to call?

MR. MAIATICO: Your Honor, we'll -- we will, with agreement of counsel, proffer that information that that was received from the U.S. Marshals and from our own FBI investigators. We do have Scott Baber, FBI Special Agent, here, as well as Gary Hipple, who is the Assistant Chief of U.S. Marshals. He's standing in the back there as well.

And the information that they would discuss, Your Honor, is that the person who took the photograph, we believe has been identified, that they did, in fact, pull that photograph. We believe it's a woman named Melissa Raymond (Phonetic), who is a friend or a close associate of the defendant, Juan Jarmon, and we would ask that she be barred

from the courtroom in the future.

And then in addition, in terms of the secure courtroom that I think would serve the best interests of everyone here and the public --

THE COURT: Well, where -- Mr. Maiatico, you have an offer of proof. The offer of proof is that Ms. Raymond took this picture, which refers to Blumberg, refers to the street names of both defendants. As I understand it, this is the woman you have identified, Melissa Raymond. This is -- she certainly appears to be the woman I saw in court during the hearing. Why don't we -- you have that -- you have a picture of her you can introduce as an exhibit?

MR. MAIATICO: (No Verbal Response.)

THE COURT: Let me give you one. Any objection to the introduction of this photograph, counsel?

MS. COGGINS: No, Your Honor.

MR. HETZNECKER: No, Your Honor.

MR. MAIATICO: Yes, Your Honor, I'd proffer to the Court that as well. I'll introduce this as Government Exhibit 2 and I proffer to the Court that the FBI agent would identify this as appearing to be the woman who was in court that day, sitting in a place in the gallery that would appear to be the perspective of the photograph that was posted as well.

(Government Exhibit 2 received in Evidence = photo)

THE COURT: Ms. Coggins, if your client wishes to

dispute that it's Ms. Raymond, he's -- I won't allow his cross-examination of him to go beyond the identification of Ms. Raymond and the taking of that picture if he wants to dispute that that's she.

MS. COGGINS: Your Honor, my client is not disputing anything. I don't want the Court to think he had any role in this. He did not know that the photograph was going to be taken or was taken.

THE COURT: Very good. In addition, to move things along a little, Mr. Maiatico, as I understand it, the Government is concerned about the security of its witnesses because this is a drug case where the agent would testify, this is a drug case where witnesses have been threatened, and the Government is concerned that if pictures of witnesses are taken and posted on social media, that they could be a jeopardy. That's the Government's offer of proof?

MR. MAIATICO: It is, Your Honor, yes.

THE COURT: Anything more?

MR. MAIATICO: Nothing further, but I would also pass up the Government exhibits.

THE COURT: Very good. And the Government -- I'm sorry, Mr. Hetznecker, Ms. Coggins, you accept the offer of proof, you are not interested in having the agent testify?

MR. HETZNECKER: No, I'm not interested in having him testify. I thought the Court mentioned something about

witnesses intimidating and I don't think that was -- that's not evidence in this case, so based on the fact that a photograph was posted, certainly I understand the Court's concern and I could see that that's a concern that we all should have, but there's been no allegation, as far as I know, that any witnesses have been threatened or intimidated.

THE COURT: Mr. Maiatico?

MR. MAIATICO: Your Honor, the case, if we would just look at the Indictment and we can also look at the -- the motion for protective order that was filed in this case, that we certainly proffer -- the Government has proffered that in this case prior to the Indictment, there are individuals that were members of this drug organization that were threatened, were intimidated, and were physically assaulted. The Government expects, and we proffered to the Court that we expect witnesses within this organization, those that have been previously threatened, previously intimidated, and previously physically assaulted, will be witnesses in this case. And we believe that there is a concern as the Court has discussed and as we proffer --

THE COURT: Mr. Hetznecker?

MR. MAIATICO: -- for the safety of these witnesses.

THE COURT: Mr. Hetznecker?

MR. HETZNECKER: I think we're complaining two different things. If, in fact, what the Government intends to

introduce is evidence that during the course of their alleged charged conspiracy there were other crimes evidenced, and they do so under a 404(b) motion, but if they're alleging that they're --

THE COURT: Mr. --

MR. HETZNECKER: -- if they're taking --

THE COURT: Mr. -- Mr. -- Mr. -- we're just dealing with the security in the courtroom --

MR. HETZNECKER: I understand. I don't want --

THE COURT: -- and whether people --

MR. HETZNECKER: I don't want this to make -- to turn into something different, which is what Mr. Maiatico has just done.

THE COURT: No, no. No, no. No, no. Your client has a Sixth Amendment right to an open courtroom and the public has a First Amendment right to an open courtroom, unless I make appropriate findings necessitating additional security. That's all we're dealing with here. The Government says that during its investigation -- and we're -- we're not dealing with 404(b) evidence. This isn't a trial ruling. This is simply a question of whether witnesses in this case have been threatened and assaulted. Are you disputing that?

MR. HETZNECKER: Yes, because there is no --

THE COURT: Fine.

MR. HETZNECKER: No, Judge, let me just finish.

THE COURT: Sit down.

MR. HETZNECKER: Let me finish.

THE COURT: Sit down. Please call your witness to establish that.

MR. MAIATICO: One moment, Your Honor.

(Pause)

MR. MAIATICO: Your Honor, the Government calls Special Agent Scott Baber to the stand.

THE COURT: Yes.

THE CLERK: Raise your hand, sir, state your name, spell your last name, and give your title.

THE WITNESS: Scott Baber, B-A-B-E-R, Special Agent with the FBI.

SCOTT BABER, GOVERNMENT'S WITNESS, SWORN

THE WITNESS: I do.

THE CLERK: Thank you, sir. Have a seat.

THE COURT: That's the fastest oath recitation I've ever heard.

THE CLERK: I'm sorry.

THE COURT: That's quite all right. Go on.

DIRECT EXAMINATION

BY MR. MAIATICO:

Q Agent Baber, how long have you been with the FBI?

A Approximately 12 years.

Q And are you one of the agents who is involved in the

investigation of this case involving both Edward Stinson and Juan Jarmon?
A Yes.
Q And are you familiar with the Indictment in this case?
A Yes.
Q Have you reviewed the Indictment?
A Yes.
Q And does the Indictment that you reviewed, does it comport with the findings of your investigation --
A Yeah.
Q -- in this case?
A Yes.
Q I'm going to talk about a few of the items that are listed in the Indictment. Within the Indictment are there allegations that were found by a Grand Jury that the individuals that were members of this group, that Edward Stinson and Juan Jarmon were a part of, were physically assaulted?
A Yes.
Q Okay. Now without revealing --

MR. MAIATICO: And I would ask the Court that we don't reveal any names of witnesses at this point. We're referencing only the Indictment in this case.

BY MR. MAIATICO:
Q Without revealing the names of the individual, can you describe the account in or around 2013, mid-2013, when a member

of this group that Stinson and Jarmon were a part of assaulted a member of the conspiracy?

A I don't know if I'm remembering the correct time period, but there's -- certainly was -- certainly there are allegations that are referenced in the Indictment where individual -- an individual who resided in the Norman Blumberg Apartments was physically assaulted based on this person's interaction with some of the defendants named in the Indictment related to drug trafficking. That is, this person had a complaint about the drug trafficking that was going on and was later physically assaulted because of that.

Q And when you talk about this person had a complaint about the drug trafficking that was going on, was that information corroborated by wire recordings in this case?

A Yes.

Q In other words, were there wire recordings where defendant Juan Jarmon discusses the fact that there was someone who was residing in the Norman Blumberg Apartments and was complaining about the drug trafficking?

A Yes.

Q Okay. And are there wire recordings of the defendant, Juan Jarmon, that describe what he did in response to those complaints?

A Yes, there were.

Q And are there recordings of the defendant, Juan Jarmon,

describing precisely what he did and boasting about what he did?

A Yes, that's correct.

Q And what were those -- can you provide us a brief summary of what those recordings contained?

A In summary, the defendant, Juan Jarmon, indicated that he had physically struck an individual in the Norman Blumberg Apartments. But without more details, it was -- it's not fair to say exactly how that person was physically assaulted in terms of whether it was with an open hand or a fist, but that the person was physically assaulted by defendant Juan Jarmon.

Q Was that person that was assaulted later interviewed --

A Yeah.

Q -- by law enforcement?

A Yes.

Q And was the information that Juan Jarmon himself described in those wire recordings corroborated by the victim?

A Yes.

Q This is a drug trafficking organization that was -- is being -- that has been charged, correct?

A Yes.

Q And as part of that drug trafficking organization there are different roles that several members of the conspiracy had, is that right?

A Yes.

Q And one of those roles that members of this conspiracy had was a -- was as a shift seller, correct?
A Yes.
Q Can you describe briefly what a shift seller did in this group?
THE COURT: Well, let's -- perhaps -- again, I don't know if this saves time or not --
MR. MAIATICO: Sure.
THE COURT: Have you been investigating drug cases for a while, Agent?
THE WITNESS: Yes, Your Honor.
THE COURT: How many years?
THE WITNESS: I'm currently no longer investigating narcotics cases other than this investigation, but prior to this I investigated narcotics for about -- approximately five years.
THE COURT: And in your experience, is it dangerous for co-defendants to cooperate in a federal -- with the Government in a federal prosecution charging gun crimes?
THE WITNESS: It certainly can be, yes, Your Honor.
THE COURT: Do we really need any more than that?
MR. HETZNECKER: I just have one question.
THE COURT: Yes.

CROSS-EXAMINATION

BY MR. HETZNECKER:

Q Agent Baber, has there been any allegations since the Indictment of intimidation of witnesses by my client?
A Not that I'm aware of, counsel.
Q Thank you.

CROSS-EXAMINATION

BY MS. COGGINS:
Q Or by my client?
A Not that I'm aware of, counsel, no.

THE COURT: Okay. Based on the agent's testimony, does anybody dispute that as alleged, simply as a matter of putting a magnetometer outside the courtroom so pictures can't be taken of witnesses, there is a need to preclude people, members of the public, from photographing witnesses in this case, a security need? Does the Defense dispute that?

MR. HETZNECKER: No, Judge.

MS. COGGINS: No, Your Honor.

THE COURT: Thank you, Agent.

Is there need for any additional testimony?

MR. HETZNECKER: No, Your Honor.

MS. COGGINS: Not from Mr. Jarmon, no.

THE COURT: I will issue an appropriate order. The order will be limited to members of the public. I am going to order that a magnetometer for pretrial and trial proceedings be placed outside the courtroom. It will not apply to Defense counsel, the staff of Defense counsel, agents of Defense

counsel. It will not apply to the Government, agents of the Government, or support staff of the Government. And it will not apply to the press. Does anyone have any objection to such an order?

MR. HETZNECKER: No, Your Honor.

MS. COGGINS: No, Your Honor.

THE COURT: Okay. Ms. Coggins, you need for the -- our omnibus motions here to be continued next week and we'll do that at your request.

Is there anything else we need to address today?

MR. HETZNECKER: No, Your Honor.

MR. MAIATICO: Your Honor, I would just ask as part of the courtroom security order that the United States Marshal Service be authorized to record the names, the identifiers of members of the public that are entering the courtroom.

THE COURT: No, I'm not going to do that.

MR. MAIATICO: Okay.

THE COURT: Anything further?

MR. MAIATICO: No, Your Honor.

MS. COGGINS: No, Your Honor.

THE COURT: All right. My thanks to counsel. My thanks to you, Mr. Hetznecker --

MR. HETZNECKER: Thank you, Your Honor.

THE COURT: -- Ms. Coggins.

MR. HETZNECKER: It's a pleasure.

THE COURT: Mr. -- that was sincere. And to our Marshals.

THE COURT DEPUTY: All rise.

(The proceeding concluded at 10:12 a.m.)

* * * * *

**C E R T I F I C A T I O N**

I, Donna Morris, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

Donna Morris

________________________ DATE: August 7, 2018